# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| TERRANCE J. SHAW, <br><br> Plaintiff, <br><br> v. <br><br> KRISTIN VASQUEZ, LAURA FRAZIER, and PAUL S. KEMPER, <br><br> Defendants. | Case No. 18-CV-158-JPS <br><br><br> **ORDER** |

**1.    INTRODUCTION**

The plaintiff, Terrance J. Shaw ("Shaw"), is incarcerated at Racine Correctional Institution ("RCI"). He alleges that he underwent heart catheterization surgery on October 12, 2016 and was prescribed Plavix to be taken daily, but RCI medical staff repeatedly failed to provide him with that medication. Upon screening, the Court permitted Plaintiff to proceed on a claim of deliberate indifference to his serious medical needs, in violation of the Eighth Amendment, against Kristin Vasquez ("Vasquez"), manager of RCI's health services unit ("HSU"), Laura Frazier ("Frazier"), assistant manager of the HSU, and Paul Kemper ("Kemper"), RCI's warden, all in their individual capacities. *See* (Docket #27, Amended Complaint; Docket #28, Second Screening Order).

On November 1, 2018, the defendants filed a motion for summary judgment. (Docket #37). That motion is now fully briefed and ripe for adjudication. For the reasons explained below, the defendants' motion will be granted, and this case will be dismissed.

**2. STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

**3. RELEVANT FACTS**

The following facts are material to the disposition of the defendants' motion for summary judgment. They are drawn from the parties' factual submissions and accompanying evidence. (Docket #39–#42, #51–#54, #56). Consistent with the standard of review, these facts are presented in a light most favorable to Shaw.

At all times relevant, Shaw was incarcerated at RCI. On October 12, 2016, he underwent heart catheterization surgery at an off-site hospital and was prescribed Plavix to be taken daily.[1] When he returned to RCI from the hospital where the surgery was performed, Shaw experienced several lapses in the dispensation of this medication. The first occurred

---

[1] Some of the relevant evidence references Clopidogrel, which is the generic drug for brand-name Plavix. For brevity's sake, the Court will use the term Plavix to refer to both the brand-name and generic forms of the drug.

immediately when he returned to the prison from the hospital in October 2016 and the last was in April 2017.

During this timeframe, the HSU at RCI was short staffed. For example, it had only one physician to attend to more than 1,800 patients. It is undisputed that this drastic shortage created a strain on the HSU's ability to timely address all orders that need attention. To address issues with untimely prescription refills, Frazier and Vasquez implemented a flag system for charts which would alert the physician of items that needed immediate review. Though the defendants say this system has improved efficiency at the HSU, it did not prevent the medication lapses that form the basis of this lawsuit.

### 3.1 First medication lapse

Shaw returned to RCI on October 13, 2017 after his surgery and was seen by a nurse in the HSU the next day. The nurse flagged Shaw's medical chart so that a doctor would order his Plavix. The doctor did so, but did not indicate that the drug should be delivered "stat" or "today." The prescription went to the central pharmacy in Waupun, Wisconsin, where it was processed without priority, causing a one-week delay in the medication reaching Shaw.

Shaw was without Plavix until October 19, 2016, when he returned to the off-site hospital for a follow-up appointment and received additional Plavix pills. The parties dispute the number of pills Shaw received there. The defendants say he received eleven pills, citing a prescription log that evidences the same. (Docket #40-1 at 2). Shaw insists he only received a seven-day supply. These things are not necessarily inconsistent. Emails dated soon afterward show that part of the October 19 dose (of eleven pills) was a one-time adjusted dose. (Docket #42-2 at 32–33). That catch-up dose

could have accounted for four pills, leaving seven more for the next seven days. It is undisputed that Shaw subsequently received his first 30-day supply of Plavix on October 25, 2016.

Shaw filed an inmate complaint about the medication lapse. Inmate complaint examiner Michelle Bones ("Bones") contacted Frazier, assistant manager of the HSU, who had no knowledge about the lapse. Frazier responded by reviewing Shaw's medical file and confirming that he had since been given pills at the hospital and his first 30-day supply. Frazier also discovered that the cause of the lapse appeared to be the doctor's failure to code the Plavix prescription properly as "stat" priority. Believing that the problem had been resolved, Frazier took no further action.

### 3.2  Second medication lapse

On November 29, 2016, Shaw received another 30-day supply of Plavix. Shaw claims to have experienced a second medication lapse from November 25 to 29, 2016. The defendants claim no such lapse occurred.

The defendants say that between the eleven pills Shaw received during his October 19 hospital visit and the thirty he received from his prescription refill on October 25, Shaw had forty-one pills to last him from October 19 through November 28, 2016; in other words, he had just enough to last until his November 29 refill. Shaw says he only received seven days' worth of pills on October 19, so together with the 30-day supply he received on October 25, he had only enough to last him through November 25.

This disputed fact turns on the issue highlighted above regarding the dose of eleven pills Shaw received during his October 19, 2016 follow-up visit to the hospital. Construing the evidence favorably to Shaw, it appears he could indeed have experienced a second medication lapse from November 25 to 29, 2016.

Shaw filed an inmate complaint about this second lapse, causing Bones to contact Frazier again. Frazier consulted Shaw's chart and told Bones there was no lapse because Shaw had been given enough pills (eleven plus 30) to last him until his November 29 refill. Bones' report indicates that she also thought, after reviewing Shaw's chart, that Shaw had received enough pills to last him until his November 29 refill. (Docket #42-3 at 2). Believing there had been no lapse, Frazier took no further action.

### 3.3 Third medication lapse

The next lapse in Shaw's medication lasted from April 25 to May 1, 2017. Leading up to that lapse, Shaw received a 30-day refill on March 24, 2017. Shaw submitted a refill request on April 19, and it was received in the HSU medication room on April 21. The defendants concede that someone in the medication room should have acted immediately on Friday, April 21 to have Shaw's prescription renewed by contacting an on-call doctor. No one in the HSU did so. As a result, Shaw did not receive his new 30-day supply until May 1, 2017.

Again Shaw submitted a grievance, and again Bones called Frazier. On May 2, after learning of the lapse from Bones, Frazier sent an email to members of the HSU staff saying:

> Hello All; it was recently brought to my attention that a patient had requested a refill of his blood thinner Clopidgrel and was advised via the medication refill slip, "Order has expired, forwarded to Prescriber for renewal." Folks, at no time is this acceptable for this medication to lapse. If no md is on site to give a verbal order to obtain enough medication locally to give till the medication is received from CPS then the on call must be contacted for a telephone order. If you have any questions about this please just ask and we will be happy to assist you. Blood thinners, anti-rejection meds and meds used to treat HIV can also be added to this list.

(Docket #51 at 4; #42-5 at 28).

Shaw wrote to Frazier on May 12, 2017 to complain about the recent medication lapse, and she responded by telling him that the HSU staff had been re-educated about the importance of consistent daily medication therapy, and that additional safeguards had been put in place to prevent another lapse in the future.

Shaw then filed another inmate grievance about the third lapse. Bones contacted Frazier to discuss the grievance, and Frazier told her that she had instructed HSU staff about the importance of refilling Shaw's medication so that no additional lapses would occur. On June 13, 2017, based on this conversation, Bones recommended that Shaw's grievance be affirmed, and she sent copies of the grievance to HSU management and Bureau of Health Services director James Greer "for review of this incident and addressing it as appropriate." (Docket #51 at 5). Bones also sent a copy to Kemper "for informational purposes." *Id.*

### 3.4 Fourth medication lapse

With his prescription set to run out on May 31, 2017, Shaw submitted a refill request on May 25. Someone in the HSU medication room sent a written response to Shaw's request, stating: "Ordered; will issue when received." When Shaw had not received his refill by May 30, he submitted another refill request advising that he was out of pills. Instead of immediately calling a doctor to obtain a refill, in accordance with the instructions in Frazier's May 2 email, HSU staff simply returned Shaw's form to him on June 5, 2017 when his new 30-day supply of Plavix arrived.

Shaw filed an inmate grievance about the fourth lapse. In response, Bones contacted Frazier, who confirmed that the lapse had occurred. On

June 22, 2017, Bones affirmed the grievance, once again sending copies to Greer and Kemper.

At some point around this time, Lon Becher, the reviewing authority for inmate complaints related to medical care, contacted Vasquez to discuss Shaw's grievances. Vasquez explained that the HSU medication room had not been staffed with a permanent licensed practical nurse for the previous six months, and the vacancy could have affected the consistency of medication refills. She also explained that she and Frazier had taken every measure possible to prevent further lapses, short of having Shaw go directly to the HSU every thirty days to have his prescription filled personally, which would be an unusually drastic measure. Because the problem with Shaw's medication was serious and reoccurring, Becher and Vasquez decided to implement this plan.

In his decision dated June 23, 2017, Becher wrote, "The plan is to have [Shaw] be scheduled to come to HSU each month to receive his medications to further ensure compliance." (Docket #42-4 at 4). Becher copied Frazier, Vasquez, Greer, and Kemper on this written decision.

Since the June 2017 lapse, Shaw has not experienced further lapses with his Plavix refills. He claims to have suffered severe chest pain and anguish as a result of the repeated delays in receiving his medication.

4.   **ANALYSIS**

The Eighth Amendment secures an inmate's right to adequate medical care. Prison officials violate that right if they exhibit deliberate indifference to an inmate's serious medical needs. *Orlowski v. Milwaukee Cty.*, 872 F.3d 417, 422 (7th Cir. 2017). To succeed on a claim of deliberate indifference, a plaintiff must prove that "(1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were

deliberately indifferent to treating [him]; and (3) this indifference caused [him] some injury." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010).

With regard to the second element, the plaintiff must show that the defendant acted with the requisite culpable state of mind. *Id.* This entails a showing that the defendant had "subjective knowledge of the risk to the inmate's health" and the defendant "disregard[ed] that risk." *Id.* In other words, the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Even if a defendant recognizes the substantial risk, he is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* Evidence that the defendant "acted negligently is insufficient to prove deliberate indifference." *Id.* Rather, "deliberate indifference is simply a synonym for intentional or reckless conduct, and that reckless describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." *Id.*

Shaw has not offered evidence from which a reasonable jury could conclude that the defendants were deliberately indifferent to his serious medical need. Shaw agrees that the defendants did not personally dispense his medication, and he agrees that Vasquez and Frazier undertook a series of increasingly drastic measures to prevent additional lapses after they occurred.

Certainly, some amount of negligence was involved in each lapse of medication. After Bones informed Frazier of the first lapse, Frazier concluded that the cause was attributable to a physician who, negligently, failed to mark the prescription "stat." This negligence is not actionable, and even if it were, the negligence is not attributable to any of the defendants in this case.

The second lapse appears to have occurred because of a misunderstanding about the number of pills Shaw received at the hospital on October 19, 2016. Even if Shaw is correct that he received only a seven-day supply, not eleven, there is no evidence to suggest the defendants knew Shaw was short on his supply and purposely chose not to initiate a refill. Further, it is clear from the evidence that Frazier and Bones believed, based on Shaw's chart, that he had received enough pills to last him until his next refill. This sincere belief that no lapse had occurred defeats a finding of deliberate indifference. *Cf. Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 683–84 (7th Cir. 2012) (sincere, even if mistaken, belief does not support a conclusion that a nurse was deliberately indifferent to an inmate's medical needs). It also explains why Frazier did not take any additional steps at that time to prevent another lapse.

The third lapse also involved negligence, this time on the part of the (unnamed) HSU staff member who received Shaw's medication refill request on a Friday and failed to contact a doctor to timely fill it. But neither Frazier nor Vasquez was involved in that refill bungle. Instead, when Frazier learned of it, she scolded her staff and instructed them that, in the future, if no physician was on-site to approve a refill, the staff was to contact the on-call doctor to place an order, ensuring that a prescription did not lapse. This is not a display of deliberate indifference; it is a reasonable, even if ultimately ineffectual, response to a risk about which Frazier had just been apprised.

Unfortunately, Frazier's instructions were not followed, and a fourth lapse occurred. HSU staff simply did not contact a doctor quickly enough to secure the refill without a lapse. Again, there is no dispute that Frazier and Vasquez had no personal involvement in this instance of Shaw's refill

request being delayed. Upon learning of the lapse, and after consultation with the grievance review team, Vasquez implemented a preventative measure more drastic than the previous one that had now proven insufficient. Her reasonable response was to instruct her staff to have Shaw come down to the HSU to personally receive his medication refill every month. As noted above, a defendant who recognizes a substantial risk is free from liability if she responds reasonably to the risk, even if the harm ultimately is not averted." *Gayton*, 593 F.3d at 620.

The Court sympathizes with Shaw's situation. It is, undoubtedly, very frustrating to experience multiple lapses of a vital medication, despite complaining about those lapses through the proper channels. There was not much more Shaw could have done to prevent the problem from reoccurring. However, there was also not much more Frazier or Vasquez could have done, either. Faced with a depleted HSU staff, it appears they acted reasonably to address each lapse with incremental steps as they learned of the lapses. At worst, their conduct was negligent, and constitutional liability does not flow from negligence.

As to Kemper, he lacks the required personal involvement to implicate Shaw's Eighth Amendment rights. *Burks v. Raemisch*, 555 F.3d 592, 593–94 (7th Cir. 2009) ("Section 1983 does not establish a system of vicarious responsibility. Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise.") (citation omitted). Kemper had no involvement with Shaw's medication and was only notified of issues when the complaint examiner copied him on letters, informing him that reoccurring instances of negligence were being addressed. *Id.* at 595 (wardens can delegate tasks to medical personnel where appropriate, because "[t]he division of labor is important

not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively").

Finally, the Court closes by noting that in his summary judgment materials, Shaw claims for the first time that the prison's overall problem of understaffing is to blame for his medication lapses. He believes the defendants should be held accountable for this issue. Setting aside the unlikelihood that Shaw could succeed in proving that any of these defendants—especially Frazier or Vasquez—personally caused the understaffing that led to his prescription lapse, that allegation is not before the Court in this case. Shaw cannot add this new factual allegation, thereby effectively amending his pleading, in response to a motion for summary judgment. *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017).

In sum, even though the fulfillment of Shaw's Plavix prescriptions between October 2016 and April 2017 was far from ideal, Shaw has not raised a triable issue as to whether the defendants were deliberately indifferent to his serious medical need. The defendants are, therefore, entitled to summary judgment.

5.  **CONCLUSION**

For the reasons stated above, the defendants' motion for summary judgment will be granted, and this case will be dismissed.

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (Docket #37) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 20th day of September, 2019.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge